UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARRYL STEPHENS,

                Petitioner,                      REPORT AND
                                        RECOMMENDATION

        - against -

                                            05 Civ. 5320 (JSR) (RLE)

DALE ARTUS,

                Respondent.

**To the HONORABLE JED S. RAKOFF, U.S.D.J.:**

## I. INTRODUCTION

Petitioner, Darryl Stephens ("Stephens"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 13, 2005. On June 6, 2005, then-Chief Judge Michael B. Mukasey directed Stephens to specify his grounds for relief, and he filed an amended petition ("Am. Pet.") on August 1, 2005. Stephens was convicted of murder in the second degree and sentenced to an indeterminate term of twenty-five years to life. He is currently incarcerated at the Clinton Correctional Facility in Dannemora, New York.

Stephens challenges his conviction on the grounds that: 1) the evidence at trial was insufficient to support his conviction; 2) the trial court failed to charge the jury that duty of care must be established beyond a reasonable doubt; 3) the trial court failed to instruct the jury on the proper *mens rea* for an aiding and abetting charge; 4) the trial court delayed in responding to jury inquiries resulting in one juror's request to be discharged and the jury rendering a verdict before a question was answered; 5) the trial court improperly influenced the jury's verdict by directing the jury to consider the top count during deliberation; 6) the trial court erred in permitting an unqualified expert to testify on Battered Child Syndrome; 7) the trial court erred in various

evidentiary rulings; 8) the trial court erred in allowing the prosecutor's improper summation, while restricting the defense's summation; and 9) the trial court abused its discretion in denying Stephens's motion for an adjournment of sentencing. For the reasons set forth below, I recommend that the petition be **DENIED**.

## II. BACKGROUND

**A.     Factual Background**[1]

Stephens's conviction for second degree murder arose from the abuse and death of nine-year old Sabrina Green. Sabrina, orphaned at the age of two when her mother died, lived with extended family and relatives. Trial Transcript ("Tr.") at 213-14, 250, 297, 299. Sabrina had been diagnosed with Attention Deficit and Hyperactivity Disorder ("ADHD"), and was prescribed Ritalin. Tr. at 300, 1013, 1027. Sabrina's older sister, Yvette Green ("Green"), was granted custody over Sabrina when her last caretaker could no longer handle her hyperactivity. Tr. at 299, 317, 1030-31. At the time Sabrina moved in, Stephens lived with Green and their ten children. Tr. at 313-14, 316.

Sabrina lived with Green for approximately one year before she died. Tr. at 317. During that year, she lost a significant amount of weight and suffered from severe scarring and bruising. Tr. at 327, 363-67, 582-83. In the last months before her death, she suffered a mysterious third-degree burn to her right hand. Tr. at 328. Neither Stephens nor Green ever sought medical

---

[1] This Court does not have the complete transcript of Stephens's trial. The factual recitation herein is based upon the available portions of the transcript and the submissions by Stephens and the State both in this Court and on direct appeal to the New York Supreme Court, Appellate Division, First Department. 28 U.S.C. § 2254, Rule 5 ("If a transcript cannot be obtained . . . a narrative summary of the evidence [may be submitted]."); *see* **Elliott v. Kuhlmann**, 2004 WL 806986, at *2 (S.D.N.Y. Apr. 9, 2004); **Douglas v. Portuondo**, 232 F. Supp. 2d 106, 109 n.1 (S.D.N.Y. 2002). This Court finds that the current record suffices to resolve Stephens's claims.

treatment for her.  **Id**.

Sabrina was presented to Our Lady of Mercy Hospital in the Bronx on November 8, 1997, in a state of cardiac arrest.  Tr. at 772.  At trial, Dr. Ozuah, the physician attending the emergency room, testified that Sabrina's cardiac and respiratory vitals were unresponsive, that she had a low body temperature, and that none of his attempts to revive her were successful.  Tr. at 777-80.  He determined that Sabrina had been dead for at least five to seven hours at the time he pronounced her death.  Tr. at 781.

An autopsy of Sabrina's body revealed second and third degree burns on her left hand, bed sores, missing patches of skin, and dark bruises on her legs and wrist, among other injuries.  Sabrina's final autopsy report revealed seven causes of death, including numerous blunt impacts; a subdural hemorrhage in her brain; and pneumonia caused by sepsis, a bacterial infection of the blood, that resulted from the injuries and infection in Sabrina's hands.  Tr. at 1178, 1180, 1182-85.  The report also revealed that her body was covered with bruises and was missing patches of skin.  Tr. at 1178-80.

In connection with Sabrina's death, Stephens was charged with four crimes: 1) murder in the second degree; 2) manslaughter in the first degree; 3) criminally negligent homicide; and 4) endangering the welfare of a child.  Respondent's Memorandum of Law ("Resp. Mem."), Exh. 2 at 5.  At trial, the prosecution advanced two alternative theories as to Stephens's guilt of second-degree murder.  Tr. at 15-18.  Under the first theory, Stephens acted in concert with Green under circumstances evincing a depraved indifference, and recklessly engaged in a pattern of physical abuse that resulted in Sabrina's death.  **Id**.  Under the alternative theory, Stephens was liable for Sabrina's death by failing to provide Sabrina with adequate medical care, violating his duty of

care toward her.  **Id**.

At trial, two of Green's children, Marcus Green ("Marcus") and Tyrone Green ("Tyrone"), testified that Stephens beat Sabrina regularly as punishment for violating household rules.  Tr. at 365, 367, 531.  Marcus noticed that Sabrina had "regular bruises" all over her body.  Tr. at 327.  Tyrone testified that Stephens said that he would "take care of it" after learning that Sabrina had been "stealing" food from the refrigerator in the middle of the night, and that he saw Sabrina's hand bandaged, covering what he later discovered to be burns, when he came home from school the following afternoon.  Tr. at 571-573.  He also testified that he saw Stephens hitting Sabrina with a belt the week before she died.  Tr. at 532-33, 568.  Marcus and Tyrone's testimony also reveals that every night since that incident, until the week before Sabrina died, Stephens and Green would tie Sabrina to her bed to prevent her from getting up to "steal" food during the night.  Tr. at 340-41, 530-31, 581.  In addition to imposing household rules and punishments, Stephens supervised Sabrina when Green was not home and regularly accompanied Sabrina to and from school.  Tr. at 319, 320, 509.  Despite Sabrina's peeling skin and other severe injuries, Stephens and Green disregarded repeated appeals by Marcus and Tyrone to provide Sabrina with medical assistance.  Tr. at 328, 529, 566.

Following a jury trial, Stephens was found guilty of second degree murder on January 10, 2000.  Am. Pet. at ¶ 3.

**B.     Procedural Background**

Stephens appealed his conviction, which was affirmed by the New York State Supreme Court, Appellate Division, First Department, on December 18, 2003.  **People v. Stephens**, 769 N.Y.S.2d 249 (App. Div. 1st Dep't 2003).  On appeal, Stephens raised the same nine claims he

raises in the instant habeas petition.

The Appellate Division dismissed both prongs of Stephens's insufficient evidence claim, finding that the record revealed that Stephens caused Sabrina's death by "acting . . . under circumstances evincing a depraved indifference to human life . . . [and] recklessly engag[ing] in conduct which created a grave risk of serious physical injury or death to Sabrina . . ." **Id**. at 251. The court found that the evidence also supported Stephens's guilt under the *in loco parentis* doctrine, showing that Stephens "treated Sabrina with the same degree of responsibility as he did the other children, not as a mere babysitter or short-term helper, but as one of the two co-equal adults functioning in the role of parent." **Id**. at 252.  The court rejected Stephens's claim that the assumption of duty charge was deficient, finding that the trial court instructed the jury that all elements must be proven beyond a reasonable doubt and that not repeating this information after every element did not make the instructions deficient.  **Id**. at 253.  The court also dismissed the remainder of Stephens's claims.  It held that the trial court properly instructed the jury that a guilty verdict on the aiding and abetting charge required a finding that Stephens "acted with the mental culpability required for the commission of the crimes charged." **Id**. at 254 (quotations omitted).  Moreover, it found no error in the trial court's response to jury inquiries, evidentiary rulings, and denial of Stephens's motion for an adjournment of sentencing. **Id**.  Leave to appeal to the New York State Court of Appeals was denied on March 31, 2004.  **People v. Stephens**, 2 N.Y.3d 746 (2004).

### III. DISCUSSION

**A.     Threshold Issues**

   **1.     Timeliness**

A person in custody pursuant to a judgment of a state court must file an application for a writ of habeas corpus within one year of his conviction becoming final.  28 U.S.C. § 2244(d)(1).  A conviction becomes final when the time to seek direct review in the United States Supreme Court by writ of certiorari expires, that is, ninety days after the final determination by the state court.  **Williams v. Artuz**, 237 F.3d 147, 151 (2d Cir. 2001) (*quoting* **Ross v. Artuz**, 150 F.3d 97, 98 (2d Cir. 1998); *see* 28 U.S.C. § 2244(d)(1)(A).  The court received Stephens's initial habeas petition on May 13, 2005, within one year of his conviction becoming final, and it is therefore timely.

   **2.     Exhaustion**

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA" or "the Act"), the Court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies.  28 U.S.C. § 2254(b)(1)(A); **Picard v. Connor**, 404 U.S. 270, 275 (1971); **Dorsey v. Kelly**, 112 F.3d 50, 52 (2d Cir. 1997).  In order to satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature.  Although not an exacting standard, a petitioner must inform the state courts of "'both the factual and the legal premises of the claim [he] asserts in federal court.'"  **Jones v. Vacco**, 126 F.3d 408, 413 (2d Cir. 1997) (*quoting* **Daye v. Att'y Gen. of New York**, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)).  Here, Stephens makes claims of various deficiencies in state evidentiary and procedural law.  Nevertheless, he raised these

claims in federal terms before the state courts, arguing that these deficiencies deprived him of due process and his right to a fair trial.

Procedurally, the petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. **See Bossett v. Walker**, 41 F.3d 825, 828 (2d Cir. 1994). He must raise a federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" **Id**. (*quoting* **Pesina v. Johnson**, 913 F.2d 53, 54 (2d Cir. 1990). Stephens's claims are procedurally exhausted in this case. He presented his federal claims on appeal to the Appellate Division, and in his application for leave to appeal to the New York State Court of Appeals. Because the claims in this petition have been brought in federal terms in the New York State courts, they are not barred from habeas review on the basis of exhaustion.

**B.     Merits of the Claims**

    **1.     Standard of Review**

AEDPA constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see* **Williams v. Taylor**, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams**, 529 U.S. at 413. Furthermore, in cases where the

7

state court decision rests on a factual determination, a federal court may not grant habeas relief unless the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Federal habeas corpus relief exists for state convictions "violat[ing] the Constitution, laws, or treaties of the United States" and not for mere "errors of state law." **Estelle v. McGuire**, 502 U.S. 62, 67 (1991). In his petition, Stephens alleges nine deficiencies by which the trial court deprived him of due process and his right to a fair trial under the Fifth, Sixth and Fourteenth Amendments, two of which have been consolidated by the Court and analyzed as evidentiary errors. Upon review of his amended petition and the trial transcript, these claims are meritless, and the state court's decision to affirm Stephens's conviction is neither contrary to nor an unreasonable application of clearly established federal law.

### 2. Insufficient Evidence and Weight of the Evidence

A petitioner challenging his state custody under 28 U.S.C. § 2254 is entitled to habeas relief when the evidence presented at trial is insufficient to permit any rational juror to find every essential fact and element of the offense proven beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 315-316 (1979); *see* **In re Winship**, 397 U.S. 358, 364 (1970). In determining whether there is sufficient evidence to support the jury's finding of guilt, a court should not interpose its own analysis and weight of the record evidence, but should inquire "whether, after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." **Jackson v. Virginia**, 443 U.S. at 319 (emphasis in original). Under AEDPA, all state court findings of fact are presumed correct, and Stephens bears the burden of rebutting that

presumption of correctness with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Stephens contends that the jury verdict is against the weight of the evidence because the prosecution failed to prove all elements of the *in loco parentis* doctrine beyond a reasonable doubt. Resp. Mem., Exh. 1 at 28. He argues that because the prosecution presented no proof that he inflicted the injuries causing Sabrina's death, his conviction for second degree murder must rest on the *in loco parentis* doctrine, which requires a showing that Stephens had assumed a duty of care to Sabrina. **Id**. Stephens's claim is without merit. Here, the record reveals that the prosecution presented sufficient evidence to support a guilty verdict for second degree murder under N.Y.P.L. § 125.25(2).

The testimony of two prosecution witnesses, Marcus and Tyrone, supports the jury's verdict on both of the prosecution's theories of liability: 1) that Stephens actively participated in the beatings and torture that caused Sabrina's death; and 2) that Stephens refused to provide Sabrina with adequate medical care despite having assumed a duty of care toward her. The final autopsy report on Sabrina's body revealed seven causes of death including pneumonia and sepsis. Marcus and Tyrone's testimony regarding Stephens's tortuous conduct toward Sabrina supports a jury verdict that he actively caused the injuries that resulted in her death. The evidence is also sufficient to support Stephens's guilt under the *in loco parentis* doctrine. A question of fact for the jury was whether Stephens, who was neither Sabrina's parent nor legal guardian, "fully put himself in the situation of a lawful parent by assuming all the obligations incident to the parental relationship," thereby assuming legal responsibility toward her. **Rutkowski v. Wasko**, 143 N.Y.S.2d 1, 1 (App. Div. 3d Dep't 1955). Living arrangements, the extent of care and services, and other circumstances are among the factors to consider in making this factual determination.

**Hadden v. Kero-Sun, Inc.**, 602 N.Y.S.2d 880, 882 (App. Div. 2d Dep't 1993).

Marcus and Tyrone's testimony show that Stephens assumed the same parental role over Sabrina that he had toward the rest of the children during the year Sabrina lived in the Green household. Stephens argues that he relinquished control over Sabrina by declaring to Green that he was "fed up" and could no longer deal with her child. Tr. at 567-68. Tyrone's testimony, however, reveals that Stephens physically punished Sabrina the week before she died, and supports a finding that Stephens retained his disciplinary authority over Sabrina notwithstanding his pronouncement.

The evidence presented therefore supports a finding of the essential elements of second degree murder under either theory advanced by the State, and Stephens has failed to rebut the State's case with clear and convincing evidence. Because Stephens has failed to demonstrate that the evidence was insufficient to establish his guilt, this claim should be **DENIED**.

### 3. Failure to Charge that Stephens's Assumption of a Duty of Care Must Be Proven Beyond a Reasonable Doubt

Stephens claims that the trial court's instruction on his liability for failure to act was deficient because the court did not explain that the assumption of duty to provide adequate medical care is an element that must be proven beyond a reasonable doubt. Resp. Mem., Exh. 1 at 31-33. "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." **Victor v. Nebraska**, 511 U.S. 1, 5 (1994). In charging the jury in a criminal case, a trial court need only ensure that "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury." **Holland v. United States**, 348 U.S. 121, 140 (1954). The trial court met the due process requirement in

10

this case by clearly stating, before charging the four required elements for second degree murder, that the prosecution bore the burden of proving each element beyond a reasonable doubt. Tr. at 1614-1615. This claim is meritless and should, therefore, be **DENIED**.

### 4. Aiding and Abetting Charge

Accessorial liability mandates a finding of the same level of culpability that is required for the underlying crime. *See* N.Y.P.L. § 20.00. Stephens argues that the trial court's jury instruction on accessorial liability for second degree depraved indifference murder was deficient because it charged "recklessness" and not "extreme recklessness" as the requisite *mens rea*. Resp. Mem., Exh. 1 at 35. The statute, however, only requires that a defendant act "recklessly," so long as there is evidence of "depraved indifference." N.Y.P.L. § 125.25(2). The trial court may charge that the level of recklessness necessary for accomplice liability for depraved indifference murder exists where the "defendant, or his accomplice . . . know that a substantial and unjustifiable risk of death exists and must consciously disregard that risk, [a disregard which] must be a great or major deviation from the standard of conduct that a reasonable person would observe in the situation." **People v. Brathwaite**, 472 N.E.2d 29, 31 (N.Y. 1984) (quotations omitted). The court need not charge extreme recklessness because the circumstances evincing a depraved indifference include "conduct, beyond being reckless, [that] is so wanton, so deficient in moral sense and concern, [and] so devoid of regard for the life or the lives of others." **Id**. Because the court was correct in instructing recklessness as the requisite *mens rea*, this claim should be **DENIED**.

### 5. Delayed Response to Jury Inquiries

During deliberations, the jury submitted seven notes to the court requesting, among other

11

things, recharges on murder in the second degree, manslaughter in the first and second degrees, and criminally negligent homicide. Tr. at 1656-65, 1678-83, 1689-94, 1696-99, 1780-83. Stephens contends that the trial court's response to the fifth note, in which the jury requested a readback of Marcus and Tyrone's testimony and a fourth recharge on second degree murder, was unconstitutionally deficient. Resp. Mem., Exh. 1 at 37; *see* Tr. at 1780. More specifically, he argues that the court's delay and failure to respond to the fifth note resulted in one juror's request to be discharged and the jury reaching a verdict before the question was answered. This claim is meritless.

Initially, the court delayed its response to the fifth note for about an hour while it waited for Stephens to be produced. Tr. at 1780-83. The court then had the requested portions of Marcus's testimony read back to the jury, and adjourned for a one hour recess. **Id**. At 3:05 p.m., the jury submitted a note withdrawing its request for a readback of Tyrone's testimony, but did not indicate whether it still needed a recharge on second degree murder. **Id**. At 5:50 p.m., upon defense counsel's suggestion, the judge questioned a juror who had requested to speak to the court. Tr. at 1788. The juror asked to be discharged, but did not provide a reason. Tr. at 1789-90. The court denied the juror's request with instructions to continue with deliberations. **Id**. The juror stated that the jury was not deliberating because there was a question pending before the court. **Id**. The judge stated that he did not recall any outstanding questions and instructed the juror to have the jury submit any questions it needed answered by the court. **Id**. Rather than submit another request, the jury submitted a note 6:10 p.m., stating that it had reached a verdict. Tr. at 1798.

The record reveals that the trial court gave adequate and timely responses to the jury's

inquiries. Given that the jury had withdrawn its request for a readback of testimony without indicating whether it still desired the fourth recharge on second degree murder, the court was correct in instructing the jury to submit any remaining questions. In reviewing communications between the jury and trial court during deliberations, "[a] jury is presumed to follow [the court's] instructions." **Richardson v. Marsh**, 481 U.S. 200, 211 (1987). Moreover, "a jury is presumed to understand a judge's answer to its question." **Weeks v. Angelone**, 528 U.S. 225, 234 (2000). Here, the trial court could not presume that the jury had outstanding questions based on one juror's statement. It correctly informed the jury that further questions should be submitted in a note. By returning a verdict rather than another note, the jury indicated that it had no further questions. *See* id. (*quoting* **Armstrong v. Toler**, 11 Wheat. 258, 279, 6 L.Ed. 468 (1826) ("Had the jury desired further information, they might, and probably would, have signified their desire to the court.")). Stephens's claim that he was deprived of his right to a fair trial because the court delayed, and failed to respond to jury inquiries is unfounded and therefore should be **DENIED**.

### 6. Direction to Deliberate the Top Count First

During deliberations, the jury asked the court's direction on how it should proceed while deliberating between the top charge of second degree murder and the lesser included charges of manslaughter in the first and second degree and criminally negligent homicide. Tr. at 1696. The court instructed the jury that it should move on to the next charge "[i]f and only if you find the defendant not guilty of murder in the second degree." Tr. at 1699-1703. Stephens claims that the court's response constituted an **Allen** [**Allen v. United States**, 164 U.S. 492 (1896)] charge that improperly pressured the jury to convict him of second degree murder. Resp. Mem., Exh. 1 at 39-40. Here, the trial court did not instruct dissenting jurors to give due consideration to the

opinion of the majority of the jurors, but provided a transition instruction, stating that the jury should proceed to deliberate on the next charge only if it could not come to a unanimous guilty verdict on the higher charge.

Criminal defendants are entitled to an instruction on lesser included offenses, even if those offenses are not separately charged in the indictment. **Keeble v. United States**, 412 U.S. 205, 208 (1978). The Supreme Court, however, has declined to specify the manner in which trial courts should instruct the jury in moving from the top charge to lesser included offenses during its deliberations. *See* **Spierings v. Alaska**, 479 U.S. 1021 (1986) (White, J., dissenting) (arguing that the Court should resolve the conflict about the lawfulness of an acquittal first "transition instruction"). In this circuit, a trial court's instruction to proceed to lesser included charges only if there is no unanimous guilty verdict on the higher charge is not erroneous as a matter of law, **United States v. Tsanas**, 572 F.2d 340, 346 (2d Cir. 1978), but the trial court should consider a defendant's suggested language and should use that wording if it is timely provided. **United States v. Roland**, 748 F.2d 1321, 1325-26 (2d Cir. 1984); **Tsanas**, 572 F.2d at 346.

Here, the trial court's transition instruction was neither contrary to nor an unreasonable application of the law clearly established by the Supreme Court. The court instructed the jury on the lesser included charges of first and second degree manslaughter and criminally negligent homicide as required, and when asked for clarification on how to proceed, gave the jury an "acquittal first" transition instruction that is in line with Second Circuit law. *See* **Roland**, 748 F.2d at 1324. Even if this instruction was improper, the record does not show that it unfairly prejudiced the jury in its deliberations, "so infect[ing] the entire trial that the resulting conviction violates due process." **Cupp v. Naughten**, 414 U.S. 141, 147 (1973). There is sufficient

evidence in the record to support the jury's guilty verdict in this case. Therefore, this claim should be **DENIED**.

      **7.**      **Evidentiary Errors**

Stephens claims that the trial court committed several evidentiary errors that deprived him of his right to a fair trial, including the admission of Dr. Milewski's expert testimony on Battered Child Syndrome, inflammatory photographs, and the prosecution's improper redirect. Resp. Mem., Exh. 1 at 42-43. It is well established that trial courts have broad discretion in making evidentiary rulings, and that federal habeas courts "do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence." **Riggins v. Nevada**, 504 U.S. 127, 147 (1992); **Estelle v. McGuire**, 502 U.S. 62, 75 (1991); **Lisenba v. California**, 314 U.S. 219, 228 (1941). With respect to Stephens's claim concerning Dr. Milewski's testimony, the relevant question is whether the admission of her testimony "so infused the trial with unfairness as to deny due process of law." **Lisenba**, 314 U.S. at 228. Stephens's claim does not meet this standard. Contrary to Stephens's assertion, Dr. Milewski was not proffered as an expert witness on Battered Child Syndrome. She was tendered as an expert in forensic pathology and proffered testimony supporting the prosecution's theory that Stephens directly inflicted the severe injuries that caused Sabrina's death. Tr. at 1173. She testified as to Sabrina's physical injuries and her ultimate causes of death, as demonstrated by the autopsy report and photographs, asserting that the injuries were similar to injuries she previously had seen in autopsy reports of abused children. Tr. at 1177-84, 1184-1203, 1214, 1236, 1243. Because the record shows that Dr. Milewski testified based on her analysis of the autopsy report and photographs, the court's decision to admit her testimony did not deprive Stephens of due

process.

Similarly, Stephens's claim that the trial court's other evidentiary rulings were erroneous should also be denied. The court's admission of Sabrina's photographs did not prejudice Stephens so as to deny him due process. The photographs were used to contrast Sabrina's physical condition before she moved in with Green and at the time of her death. Despite the stark contrast, "[t]he fact that evidence admitted as relevant by a court is shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its reception a violation of due process." **Lisenba**, 314 U.S. at 228-29. Furthermore, Stephens's claim that the court improperly allowed the prosecution to elicit indirect testimony from a witness, Denise Nelson, on issues outside the scope of cross-examination is also without merit. The record reveals that the trial court restricted the redirect by sustaining defense counsel's objections and issuing limiting instructions to the jury. Tr. at 310-11. Therefore, Stephens's claim should be **DENIED**.

### 8.    Prosecution's Summation

Stephens claims that the prosecutor's summation denigrated defense counsel by suggesting that the defense's goal was to divert the jury from the facts, and appealed to the jury's sympathy by stating that the jury could not see or hear Sabrina's pain, screaming or battering. Resp. Mem., Exh. 1 at 50, 52. He argues that the improper summation deprived him of his right to a fair trial. In reviewing this claim, the Court should examine the context of the prosecutor's comments to determine whether they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" **Darden v. Wainwright**, 477 U.S. 168, 181 (1986) (*quoting* **Donnelly v. DeChristoforo**, 416 U.S. 637, 643 (1974)); *see* **United States v.**

16

**Young**, 470 U.S. 1, 11 (1985).  Thus, even where the prosecution argues improperly in response to defense counsel's summation and the trial court fails to take corrective measures, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." **Young**, 470 U.S. at 11.

The record reveals that the prosecutor's suggestion that defense counsel was trying to divert the jury from the facts was a response to defense counsel's summation argument that the prosecution intentionally hid evidence from the jury by not calling a scheduled witness.  Tr. at 1467-68, 1502.  According to the Supreme Court, such an "invited response" by the prosecution is within the bounds of a proper summation, and does not demand reversing a conviction.  **Young**, 470 U.S. at 12-13.  Similarly, the prosecutor's comments about Sabrina's pain, screaming, and battering were in response to the defense's argument that although Sabrina suffered physical injuries, those injuries did not cause her death.  Tr. at 1352, 1452, 1460, 1522-33.  Because the prosecution's summation did not unfairly prejudice the jury, Stephens's claim that he was denied due process and a fair trial on these bases should be **DENIED**.

   **9.**  **Denial of Stephens's Request for an Adjournment of Sentencing**

Stephens claims that the trial court abused its discretion when it denied his request for an adjournment of sentencing and deprived him of an opportunity to present mitigating factors at his sentencing hearing.  Resp. Mem., Exh. 1 at 54.  The denial of a request for more time does not necessarily violate due process even if the defendant fails to present evidence.  **Ungar v. Sarafite**, 376 U.S. 575, 589 (1964).  The trial court's decision to deny Stephens's adjournment request falls within its discretion and will not support a claim for habeas relief unless it was so arbitrary that it deprived him of due process.  **Ungar**, 376 U.S. at 589 (1964).  In determining

whether the trial court's decision was arbitrary, the Court should look to the "circumstances present . . ., particularly in the reasons presented to the trial judge at the time the request is denied." **Id**.

Here, the record indicates that the court's denial of a continuance was not an abuse of discretion. After Stephens was found guilty, the court set a date for sentencing three weeks later, which was agreed to by counsel without objection. Sentencing Transcript at 4, 6. Although Stephens argues that three weeks was insufficient to gather the necessary mitigating evidence and testimony from family members, the court was not apprised of this concern until the day of the sentencing hearing. **Id**. at 3-4, 27-28. The trial court considered 1) the fact that all parties were present at the hearing; 2) the prosecutor's upcoming maternity leave; and 3) Stephens's inability to show that the three week period was insufficient to gather the mitigating evidence, and denied Stephens's oral application. **Id**. at 7-10. The trial court's decision to deny the adjournment was not arbitrary and did not deprive Stephens of due process. Therefore, this claim should be **DENIED**. For these same reasons, Stephens's alternative claim that his sentence is excessive and unfair also should be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Stephens's petition for a writ of habeas corpus be **DENIED.** Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, and to the chambers of the undersigned,

500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Secretary of Health and Human Services**, 892 F.2d 15, 16 (2d Cir. 1989) (***per curiam***); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(c).

**DATED: August 29, 2006**
**New York, New York**

                          **Respectfully Submitted,**

                          */s/ Ronald L. Ellis*

                        **The Honorable Ronald L. Ellis**
                        **United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**

<u>Petitioner</u>
Darryl Stephens 00A0593
Clinton Correctional Facility Annex
P.O. Box 2002
Dannemora, New York 12929

<u>Counsel for Respondent</u>
Jessica Carmela Darpino
Assistant District Attorney, Bronx County
198 East 161st Street
Bronx, New York 10451